UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LAWRENCE BRYANT,<br>    Defendant. | Criminal No. 06-227-06 |

**DETENTION MEMORANDUM**

The Defendant, Lawrence Bryant, has been charged by indictment with conspiracy to distribute and possess with intent to distribute one kilogram or more of phencyclidine ("PCP"), a Schedule II controlled substance, in violation 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and § 841 (b)(1)(A)(iv); unlawful possession with intent to distribute and distribution of one kilogram or more of PCP, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv) and 18 U.S.C. § 2; unlawful distribution of one hundred grams or more of PCP in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv); and criminal forfeiture in violation of 21 U.S.C. § 853 and § 853(p).  The Government requested a detention hearing, which was held on August 4, 2006.  At the conclusion of the detention hearing, the Court found that the Defendant should be held without bond.  This memorandum is submitted to comply with the statutory obligation that "the judicial officer shall include written findings of fact and a written

statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

### Findings of Fact

At the detention hearing, the Government proffered that the Defendant was involved in a conspiracy to import and distribute gallons of PCP to the Washington, DC metropolitan area from approximately September 2005 through at least July 27, 2006. According to the government, Mr. Jackson and Mr. Hopkins, as leaders of the conspiracy, purchased gallons of PCP from Mr. Tony Fitzgerald Hilt, also known as "T." Mr. Hilt, a member of the L.A. based gang Mona Park Crips, sold PCP to Mr. Jackson, Mr. Hopkins, or to various other intermediaries of the conspiracy.[1]

Mr. Jackson and Mr. Hopkins imported the PCP from California to Washington, DC by enlisting female couriers to individually transport a gallon of PCP in their checked-in luggage from Long Beach, CA to Washington, DC.[2] The couriers and the conspirators[3] would fly from Dulles International Airport ("IAD") located in Dulles, VA, to Long Beach Airport ("LGB") located in Long Beach, CA by commercial airlines. The couriers included: Ms. Tinesha Denise Adams,[4] Ms.

---

[1] The sale transaction would occur at Mr. Hilt's home in Los Angeles, CA.

[2] After the trips were complete, Mr. Jackson and other conspirators paid the couriers for their flight, hotel and travel expenses with travelers checks, Western Union transfers, and money-grams. Many of the money grams were purchased from a Shopper's Food Warehouse grocery store, which Mr. Jackson frequents.

[3] The Government proffers that Mr. Jackson and Mr. Hopkins usually accompanied the couriers on their trips to and from California. However, at times the couriers were accompanied by other conspirators.

[4] Ms. Adams made 12 trips.

Shawntae Anderson,[5] and Ms. Lanika Mercedes Franklin.[6] After purchasing the PCP from Mr. Hilt, the conspirators, with the assistance of the couriers, would purchase shampoo, lotion, and Listerine bottles and empty the contents of the bottles to later fill them up with PCP. The couriers carried these bottles in their checked in luggage on their flight back from LGB to IAD.

The flight records indicate that the conspirators made about 25 flights between the Washington, DC area to Long Beach, CA from September 2005 through at least July 27, 2006.[7] Once the PCP was in the Washington, DC area, the conspirators would dilute the PCP with starter fluid and sell the diluted PCP to wholesalers and distributors. The conspirators would meet to sell the PCP and exchange money at various locations in Washington, DC and suburban Maryland, including Ms. Wanda Owens'[8] apartment, Mr. Hargrove's apartment, Mr. Hopkin's father's home, and the Safari Steakhouse. The Defendant frequently met Mr. Jackson at Ms. Owens house and was surveilled meeting Jackson immediately after a load arrived in the Washington, DC area.

In May, 2006, a wiretap was placed on Mr. Jackson's phone. The Defendant and Mr. Jackson talked repeatedly about the Kirk Carter cocaine case presently pending in this district court before

---

[5] Ms. Anderson made 11 trips.

[6] The exact number of trips that Ms. Franklin made is unknown, however she did travel numerous times.

[7] The flight records indicate that the conspirators used JetBlue, Southwest, and AmericaWest airlines. It is estimated that at least one gallon of PCP was carried back from Long Beach on each trip, which equals about 25 gallons of undiluted PCP being imported to the Washington, DC area. One gallon of liquid PCP equals approximately 3.7 kilograms of the drug. The Government proffered that the actual amount of PCP imported actually exceeds the special allegation amount of 20 kilograms listed in the indictment. In a superceding indictment, the Government will allege the full amount.

[8] Ms. Wanda Owens is Mr. Jackson's sister.

Judge Huvelle. The Defendant and Mr. Jackson speculated about the identity of the cooperators. The two also spoke about how the conspirators in the Kirk Carter case could have prevented people cooperating with the government by providing attorneys for the people in the lower ranks of the conspiracy. Authorities also heard conversations where the Defendant and Mr. Jackson spoke about Mr. Gray,[9] another conspirator,

The Government also heard the Defendant talk to Mr. Jackson about seed money and guns. The conversations were usually in code but occasionally they would actually use the word "money." For example on one occasion, the Defendant is heard discussing going to Barry Farms[10] to collect money. On a different occasion, May 15, 2006, the conversation was about the Defendant selling a firearm. Mr. Jackson was also overheard expressing exasperation because the Defendant did not deliver money on time. The Defendant and Mr. Jackson also discussed flights to California.

The Defendant maintained a job during the day and much of his drug activity occurred after hours. According to government records, the Defendant has one prior conviction of attempted possession with intent to distribute heroin. The Government is also concerned that the Defendant made false representations to the court the day before his detention hearing.[11] Upon learning of his indictment, the Defendant arranged with the FBI to turn himself into authorities.

---

[9] Mr. Gray is also known as "Punchy."

[10] The residential complex where Ms. Owens lives.

[11] The Government alleges that the Defendant owned three homes at one point and the Defendant contends that he currently owns one home.

**Discussion**

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* (hereinafter "the Act"), provides, in pertinent part, that if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person . . . [or] the safety of any other person and the community, such judicial officer shall order the detention of the [Defendant] before trial." 18 U.S.C. § 3142(e). Danger to the community alone is a sufficient basis upon which to order pretrial detention, if the judicial officer finds by clear and convincing evidence that Defendant's pretrial release would constitute an unreasonable risk of danger to the community. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). When, as here, there is probable cause to believe that a Defendant has committed a violation of the Controlled Substance Act for which a maximum penalty of 10 years or more is prescribed, a rebuttable presumption arises that the Defendant constitutes a danger to the community, and no pretrial release condition or combination of conditions may be imposed to assure his future presence in court or to reasonably assure the safety of the community.

Here, the government seeks pre-trial detention on the grounds that the Defendant poses a danger to the community and a risk of flight. In determining whether there are conditions of release which will reasonably assure the safety of the community, the judicial officer shall take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, including the Defendant's ties to the community; and (4) the nature and

seriousness of the danger to any person or to the community which would be posed by the Defendant's release.  *See* 18 U.S.C. §3142(g).

The first factor, the nature and circumstances of the offense, favors detention.  The Defendant is charged with conspiracy to distribute  massive amounts of PCP into the Washington, DC area.

The second factor, the weight of the evidence, also favors detention.  According to flight records, the Defendant, accompanied by the couriers, made several trips to Long Beach, CA.  The Government has surveillance video of the Defendant involved in PCP transactions.  The Defendant is also heard on  wiretap speaking to Mr. Jackson about PCP transactions, drug money, and a pending cocaine case.  The third factor, the history and characteristics of the Defendant, does not support pretrial detention.  The fourth factor, the nature and seriousness of the danger to the community should the Defendant be released, also favors detention.  Although the instant charges did not involve violent activity, the Defendant was heavily involved in importing a massive amount of PCP, a dangerous and illegal substance that causes violence in the Washington, DC area.

## **Conclusion**

Based upon consideration of all the evidence and the factors set forth in 18 U.S.C. § 3142(g), the Court concludes that the evidence clearly and convincingly establishes that the Defendant's pretrial release would constitute an unreasonable risk of danger to the community.  The presumption in favor of detention establishes by the statute has not been overcome by the Defendant in this case.

Therefore, the government's motion for pretrial detention is granted and the Defendant is to be held without bond pending further actions of this court.


Dated: August _21_, 2006　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　ALAN KAY
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE