UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 06-227-06 (RBW)** |
| | : | |
| v. | : | **Judge Reggie B. Walton** |
| | : | |
| **LAWRENCE BRYANT,** | : | |
| Defendant. | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY RELEASE CONDITIONS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby opposes the defendant's motion to modify release conditions. The government relies upon the points and authorities set out in this memorandum and at any hearing on this matter.

1. The government's investigation of the narcotics conspiracy in which the defendant participated uncovered a large-scale, drug trafficking organization that had been operating between California, District of Columbia, the State of Maryland, and the Commonwealth of Virginia. Agents working on the case estimate that in the past years the group was responsible for the distribution of at least more than 30 kilograms of phencyclidine ("PCP").

2. The conspiracy operated to transport gallon quantities of PCP from California to the Washington, D.C. area for re-sale to lower level drug sellers who supplied neighborhood and street-level sellers with PCP. The organization was directed for the most part by Darnell Anthony Jackson and Troy Hopkins. Some members of the conspiracy traveled to Los Angeles, using Long Beach Airport. After arriving in the area of Compton, California, members of the conspiracy would meet with Tony Hilt a supplier of large quantities of PCP. After retrieving the gallon quantities of PCP liquid, the conspirators would take the liquid and place it in common containers, such as shampoo,

mouth wash, or body lotion bottles.  They would then place these bottles in the airplane check-in luggage for delivery to Washington.  In fact, the luggage would be carried by several couriers, some of whom are charged in the Indictment in this case.

3.   The regular couriers traveled frequently between Los Angeles and Dulles International Airport during the period of the conspiracy, and flight records reveal more than thirty trips by these regular couriers.  It was the practice of the couriers to each carry a gallon of PCP (which equals 3.7 kilograms of PCP) in their bags.  The Washington area members of the conspiracy took turns traveling to California to pick up the PCP, and pay the couriers.  They used Traveler's Moneygram and Western Union wire remitter services, among other methods, in order to advance monies to the couriers, and carried sums of cash on their persons to pay the drug suppliers.  It was not uncommon for the Washington-based members of the conspiracy to book and even pay for the California-based couriers' flights.

4.   The evidence will show from intercepted phone calls and videotapes of a meeting between defendant Bryant and Jackson that these calls and meeting were in furtherance of the conspiracy.  Although the defendant was employed at the time he participated in the conspiracy, defendant Bryant called Jackson numerous times during the workday from a cellular telephone subscribed in his own name.  The defendant also met with Jackson at times when his workday was over, and on one occasion used his work schedule as an excuse to avoid paying Jackson for a prior delivery of PCP.  Indeed, in other calls defendant Bryant informed Jackson that he was in Capitol Heights, Maryland where he could meet Jackson to pay for prior drug sales.

5.   In addition, wiretap calls revealed defendant Bryant talked about money using the kind of coded language for money that is commonly used by drug dealers attempting to avoid

detection. He also discussed "heavy joints" with Jackson, explaining they were like "the alpha kappa alpha," which agents believed based on their experience were coded references to a firearm.[1]

6.  Although the government initially opposed the defendant's release in this case, the government had not opposed several recent modifications of the defendant's release status for various events which occurred in the past.

7.  However, the government respectfully opposes the instant request to modify the defendant's conditions of release. Significantly, as the Court is well aware, the defendant is charged with a very serious felony offense and the defendant faces, if convicted, a long term of imprisonment. Moreover, the ravages of the PCP trade in our community have been great and the lasting effects of PCP on individuals are devastating and highly destructive.

8.  The defendant may have an "exemplary" record with his current supervision; however, the government believes that his current supervision status is at a minimum what is required when a defendant is charged in such a broad conspiracy and dangerous offense.

9.  The indicted defendants were involved in a large scale drug conspiracy that had dumped gallons of PCP onto the streets of Washington, D.C. and Suburban Maryland. Notwithstanding the fact that defendant Bryant was employed during the time of his participation in the conspiracy, he seems to have worked around his job to belong to this drug organization. Finally, the defendant knowingly participated in a PCP conspiracy, and the evidence will show that he dealt directly with the self-described leader of the group, Darnell Anthony Jackson. As such, this Court should deny any further changes in the defendant's current release conditions.

---

[1] In other calls Bryant discusses "shaving some off a brick." This reference is believed to be for cocaine.

WHEREFORE, the United States, by its counsel, respectfully requests that the Court deny defendant Bryant's Motion to modify release conditions.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

_____/s/_____
EMORY V. COLE
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20001
(202) 616-3388