UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Crim. No. 06-227-06 (RBW) |
| | ) |
| LAWRENCE BRYANT | ) |

**DEFENDANT BRYANT'S MOTION TO SUPPRESS
ELECTRONIC SURVEILLANCE EVIDENCE AND TANGIBLE EVIDENCE
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Defendant, Lawrence Bryant, through undersigned counsel, pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, 18 U.S.C. 2518(10)(a), and the Fourth Amendment to the United States Constitution, respectfully moves this Court to suppress the use of all electronic surveillance evidence, and all fruits of that evidence. As grounds for this motion defendant states as follows:

**BACKGROUND / STANDING**

The indictment in this case is a four count indictment charging Darnell Anthony Jackson and twelve other defendants, including Mr. Bryant, with conspiracy to distribute and possess with intent to distribute more than a kilogram of a mixture or substance containing a detectable amount of PCP in violation of 21 U.S.C. 846 and 841 (a)(1) and (b)(1)(A). Mr. Bryant is charged in Count One of the indictment - the conspiracy count. Mr. Jackson, along with a number of other defendants, is charged in Counts Two and Three with possession with intent to distribute PCP and distribution of PCP on March 10, 2006. Mr. Jackson alone is charged in Count Four with distribution of PCP on May 24, 2006. The motions hearing is scheduled for September 24 and 25, 2007, and trial is scheduled to begin September 26, 2007.

The charges against Mr. Bryant stem, in part, from information gathered during electronic surveillance of wire communications to and from telephone number 202-446-4546. The wire communications were intercepted after the government filed an ex parte Application For Interception of Wire Communications to and from the target number 202-446-4546. In support

- 2 -

of the Application For Interception of Wire Communications the government filed an affidavit prepared by Timothy Ervin, Special Agent (SA) with the Federal Bureau of Investigation (FBI). Hundreds of communications were intercepted.  The government has indicated that they intend to introduce as evidence at trial approximately 157 of the intercepted telephone conversations, including a number of the conversations allegedly involving Mr. Bryant.  In addition, the government has obtained other evidence as a direct result of the information developed from the "wiretaps", including tangible evidence seized from the defendant's house at 1918 Black Oak Court in Waldorf, Maryland.[1]

18 U.S.C. 2518(10)(a) provides that "[a]ny aggrieved person in any trial, hearing, or proceeding in or before any court . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that – (i) the communication was unlawfully intercepted . . . ."  Section 2510(11) defines an "aggrieved person" as a "person who was a party to any intercepted wire, oral, or electronic communication . . . ."  Thus Mr. Bryant is an "aggrieved person" who has standing to challenge the use of the evidence derived as a result of the electronic surveillance.

**"NECESSITY" REQUIREMENTS OF 18 U.S.C. 2518 WERE NOT MET:**

Defendant Bryant contends that wire communications were unlawfully intercepted because the Court Order authorizing the wiretap was obtained in contravention of the requirements of 18 U.S.C. 2516, 2518(1)(c), and 2518(3)(c).  18 U.S.C. Section 2510, et seq. establishes rules and procedures that carefully balance the privacy rights of individuals against the government's need to investigate certain criminal activities.  The government's gathering of electronic surveillance evidence in this case violated those rules.

---

[1] Due to problems with counsel's scanner the wiretap application, affidavit in support of the application, and the search warrant affidavit for Mr. Bryant's home could not be filed contemporaneously with this motion.  Instead, these exhibits will be filed with a supplemental pleading.

- 3 -

18 U.S.C. 2518(3)(c) requires that before a judge can approve a wiretap application it must determine, *inter alia*, that "normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried or be too dangerous." This provision is commonly referred to as the "necessity requirement." The purpose of the "'necessity requirement' is to ensure 'that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime'". United States v. Cooper, 85 F. Supp 2d 1, 33 (D.D.C. 2000), (quoting United States v. Johnson, 696 F. 2d 115, 123 (D.C. Cir. 1982) (citation omitted). Defendant contends that the government did not satisfy the "necessity requirement" in this case.

The government's affidavit in support of the wiretap application demonstrates that the wiretap was sought in this case even though traditional investigative techniques were succeeding. Prior to seeking wiretap authorization the government had already identified and confirmed much of the information regarding the target, Darnell Jackson. A cooperating witness was with Jackson on a regular basis, listened to private conversations; and flew with him to California, apparently to make arrangements for a drug shipment. (See Attached Wiretap Affid. pp. 20- 24). The government already had flight records and had identified at least three alleged couriers - Shawntae Anderson, Dominique Washington, and Tinesha Adams. (See Attached Wiretap Affid. pp. 16 - 29).  The government had been conducting surveillance effectively, tracking the couriers from the Los Angeles, California area to the D.C. area and back. (See Attached Wiretap Affid. pp. 16 - 29).  Most significantly, they had already identified Darnell Jackson's supplier as "T", believed to be Tony Hilt. (See Attached Wiretap Affid. pp. 8, 11-14).  The usual justification for the wiretap - identifying the supplier and others who could not be learned from the cooperating witnesses - simply did not exist in this case. The investigation of the remaining individuals could have been reasonably accomplished through the normal investigative techniques which were already being used. Thus the government's claim of "necessity" rings hollow in this case.

- 4 -

The use of wiretaps seems to have greatly increased in recent years. It appears that law enforcement agencies have discovered that it can be a very effective tool, and the agencies more regularly seek and obtain both the manpower and funding to run wiretap operations. Wiretaps seem to have become more of a normal investigative technique, rather than an investigative tool to be used when other investigative methods fail. As a result, the "necessity requirement" is becoming diluted.

The purpose of the wiretap statute can only be achieved by "giv[ing] close scrutiny to applications challenged for noncompliance and . . . reject[ing] generalized and conclusory statements that other investigative procedures would prove unsuccessful." Cooper, 85 F. Supp 2d at 33, quoting Johnson, 696 F. 2d at 123. Defendant recognizes that wiretaps do not have to be an absolute last resort. See, Cooper, supra at 33, citing United States v. Williams, 580 F.2d 578, 588 (D.C. Cir. 1978). Nevertheless, in this case, a review of the affidavit in support of the wiretap shows that the government did not need the wiretap to make its case against the defendants in the indictment. Normal investigative techniques were working, and would have led to the indictment of the same people if pursued to its conclusion without the wire. The use of the wiretap facilitated and expedited the investigation, but was not necessary as required by 18 U.S.C. 2518. The government's statements as to necessity were generalized and conclusory. Thus the "necessity requirement" was not satisfied, and the application was therefore not compliant with the statutory requirements. Accordingly, Mr. Bryant submits that his statutory and 4th Amendment rights were violated, and that the wiretap evidence should be suppressed.

**ALL FRUITS OF THE IMPROPER WIRETAP MUST BE SUPPRESSSED**

On or about July 27, 2006, FBI Special Agent Timothy Ervin swore out an affidavit in support of a number of search warrants, including a warrant for 1918 Black Oak Court, Waldorf, Maryland. The affidavit in support of the search warrant for Mr. Bryant's home was based almost exclusively on the government's interpretation of three of the intercepted telephone

- 5 -

conversations. (See Attached S/W Affid. pp. 23-24).  The affidavit appears to suggest that the telephone calls show that Mr. Bryant was involved in the alleged narcotics conspiracy.   There were no other representations establishing probable cause to believe that contraband or evidence of a crime would be discovered at Mr. Bryant's home.  Since the search was predicated solely on the improper wiretap interceptions, the items seized during that search must also be suppressed as "fruit of the poisonous tree". Wong Sun v. United States, 371 U.S. 471 (1963).

**CONCLUSION**

WHEREFORE, for the foregoing reasons, defendant respectfully requests that this Court order the suppression of all electronic surveillance evidence, all tangible evidence seized from 1918 Black Oak Court, Waldorf, Maryland, and any other "fruits" of the illegal surveillance.

Respectfully submitted,

_____
Howard B. Katzoff
717 D Street, NW   Suite 310
Washington, D.C. 20004
Counsel for Lawrence Bryant
(202) 783-6414

CERTIFICATE OF SERVICE

I hereby certify that this  18th  Day of   June   , 2007,  a copy of the foregoing Motion was served electronically on government counsel and all defense counsel of record.

_____
Howard B. Katzoff